**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEONIDES HERNANDEZ ALVAREZ, | ) | |
| | ) | |
| Petitioner, | ) | No. 3:26-cv-01400 |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

## I. MEMORANDUM

Now before the Court is Petitioner Leonides Hernandez Alvarez's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 3) (the "Petition"). Respondents filed a so-styled Response to Petition of Habeas Corpus (Doc. 7) (the "Response"), attaching, *inter alia*, the Declaration of Deportation Officer Daniel Zamarripa, Jr. (Doc. 7-3) (the "Declaration"). After the Response was served, Petitioner timely filed a letter in further support of the Petition (Doc. 8). For the reasons that follow, the Petition will be granted as set forth in the Order below.

### A. Factual Background

Petitioner "escaped from Cuba and its dictatorship." Doc. 3-1 at 1. After fleeing Cuba, Petitioner entered the United States in 2021, and was encountered by the United States Border Patrol in Texas. Decl. (Doc. 7-3) ¶ 2. Border Patrol released Petitioner, providing him with several Immigration and Customs Enforcement ("ICE") "check-in" dates. Doc. 3-1 at 1. At one of these scheduled appointments, ICE agents seized Petitioner's documents. Id. He was then taken into ICE custody on October 14, 2025. Decl. ¶ 3.

On December 19, 2025, Immigration Judge Pedro Espinal entered a removal order directing that Petitioner "shall be removed to Cuba." Resp. Ex. 2 (Doc. 7-2) at 2-3. Immigration

Judge Espinal's order became a final order of removal on January 20, 2026, because Petitioner did not lodge an appeal. Decl. ¶ 6. Despite nearly 12 months passing since ICE first detained Petitioner, and more than eight months since Immigration Judge Espinal's order of removal became final, Petitioner remains detained by ICE.

**B. Analysis**

The Petition asserts that Petitioner's continued detention violates 8 U.S.C. § 1231. Pet. ¶ 13.[1] Section 1231(a) provides for a 90-day removal period, during which the Attorney General "shall detain" the individual who had been ordered removed. See 8 U.S.C. § 1231(a)(1)(A), (2)(A). But once the removal period has passed, continued detention is not authorized by statute when "removal is no longer reasonably foreseeable." Zadvydas v. Davis, 533 U.S. 678, 699 (2001). In other words, "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Id. at 689. Under the Zadvydas framework, a post-removal order detention period of six months is "presumptively reasonable." Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Respondents concede that Petitioner's more than eight months of post-removal-order detention facially surpasses the six months considered "presumptively reasonable" under Zadvydas. Resp. at 5. Respondents' argument that the Court should disregard this extended detention duration because Petitioner "failed to comply with removal efforts," id., is not well

[1] Respondents concede that the Court has jurisdiction to act on the Petition. Resp. at 3; see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

taken and borders on frivolous. Although § 1231(a)(1)(C) allows for the suspension of the removal period under certain conditions, none of those circumstances appear to be present here. Respondents identify no application or other document material to removal that Petitioner refused to complete.[2] Respondents also identify no specific act by Petitioner that "prevent[ed]" Respondents from removing Petitioner. Instead, Respondents present an irrelevant narrative of ICE transferring Petitioner between various locations within the United States.

Two days after the Court entered the Case Management Order (ECF No. 4) directing Respondents to respond to the Petition, Respondents transferred Petitioner from the Moshannon Valley Processing Center ("Moshannon") in Philipsburg, Pennsylvania, to the Port Isabel Service Processing Center in Los Fresnos, Texas. Decl. ¶ 22. ICE then transported Petitioner to the Hidalgo Port of Entry. Id. ¶ 23. Respondents make the conclusory averment that, having transported Petitioner more than 1,500 miles to the United States-Mexico border, Petitioner then "refused to depart the United States" before ICE transferred him the 1,500 miles back to Moshannon. Id. ¶¶ 23, 24. As a court recently discussed when presented with materially indistinguishable facts:

> It is unclear whether ICE transported Petitioner to the border and essentially asked him to voluntarily depart, whether ICE had ever previously communicated with Mexico regarding Petitioner[] or whether ICE even had an approved plan for removal to Mexico that Petitioner actually thwarted in some way. Further, assuming that Mexico was willing to accept Petitioner, the officer does not explain

[2] Petitioner's initial failure to sign a "Notice of Removal to Mexico" has no apparent bearing on Respondents' ability to remove Petitioner. See, e.g., Martinez v. Warden, Fla. Baker Corr. Inst., No. 3:26-cv-01363, 2026 WL 1858268, at *3 (M.D. Fla. June 29, 2026) ("The document[] that Petitioner refused to sign are notices to him about ICE's intention to remove him to Mexico . . . not applications for travel documents or forms that would otherwise appear to assist in his removal."). Indeed, this irrelevance is confirmed by the Declaration, which appears to claim that no documentation is needed to effectuate Petitioner's removal to Mexico. Decl. ¶ 9 ("Mexico has agreed to accept deportees for nationals from several countries, including Cuba, and routinely accepts Cuban nationals without a need for travel documents.").

> why ICE could not or did not thereafter seek travel documents for Petitioner or otherwise plan for his removal to Mexico via a different way such as a charter flight.

Zamora-Escalonga v. Parra, 1:26-cv-25064, 2026 WL 2481755, at *4 (S.D. Fla. Aug. 25, 2026) (quoting Hernandez v. Mullin, No. 3:26-cv-00619, 2026 WL 2249504, at *4 (M.D. Fla. Aug. 5, 2026)). After detaining Petitioner for 356 days and transporting him vast distances across the United States, there is simply nothing in the record that could allow the Court to conclude that Petitioner took—or even had the capacity to take—any action that would have prevented Respondents from transporting Petitioner across the United States-Mexico border.[3] Respondents' various intra-country transfers, therefore, provide no basis to presume that Petitioner's detention remains reasonable for the purposes of § 1231.

Petitioner also has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Although Immigration Judge Espinal ordered Petitioner removed to Cuba, Petitioner alleges that ICE has been unable to obtain travel documents from the Cuban government. Pet. ¶ 13. The Declaration confirms Respondents' inability to remove Petitioner consistent with Immigration Judge Espinal's order, indicating that the Government of Cuba denied Petitioner's repatriation on or about December 12, 2025. Decl. ¶ 7. Accordingly, the burden shifts to Respondents, who must provide evidence sufficient to rebut Petitioner's showing. Zadvydas, 533 U.S. at 701.

Respondents have provided the Court with no evidence adequate to support a finding that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Notwithstanding Respondents' averments that they could transfer Petitioner *near* to the

[3] Indeed, the Court can find no basis in the Declaration for the representation by Respondents' counsel that Petitioner "affirmatively frustrate[d] the removal process," and accordingly reminds Respondents' counsel of their obligations under Pennsylvania Rule of Professional Conduct 3.1, which governs counsel's conduct before the Court. See LCvR 83.3(A).

United State's border with Mexico, "[a]n effort to compel an individual to voluntarily depart by walking across an international border to a country of which he is not a citizen is not a removal effort." Mendoza Martinez v. Parra, No. 1:26-cv-024255, 2026 WL 2318024, at *6 (S.D. Fla. Aug. 11, 2026). Although Respondents generally suggest that Mexico has previously "agreed to accept deportees for nationals from several countries, including Cuba," Decl. ¶ 9, there is no indication that Mexico has agreed to accept Petitioner (or that Respondents have made such a request) and Respondents identify no other potential third country to which Petitioner may be removed. Respondents have presented the Court with no plan to remove Petitioner and, in light of the more than eight months that Petitioner has already been detained since the removal order became final, Petitioner's continued detention is not authorized by § 1231. Zadvydas, 533 U.S. at 701 ("[A]s the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

## II. ORDER

For the above reasons, the Petition (Doc. 3) is **GRANTED** and a writ of habeas corpus is issued. Respondents are **ORDERED** to **RELEASE** Petitioner **LEONIDES HERNANDEZ ALVAREZ** from custody, within three miles of Miami, FL, or such other location within the United States as Petitioner voluntarily agrees to in writing, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3), no later than 12:01 p.m. on October 9, 2026. Respondents **SHALL CERTIFY COMPLIANCE** with this Order by filing a declaration or affidavit pursuant to 28 U.S.C. § 1746, no later than 1:00 p.m. on October 9, 2026, confirming the date, time and location of Petitioner's release, and that appropriate conditions of supervision have been imposed.

IT IS SO ORDERED.

October 8, 2026

s/Cathy Bissoon
Cathy Bissoon
Chief United States District Judge

cc (via ECF email notification):
All Counsel of Record